OPINION
{¶ 1} Appellant, David Lester, appeals his adjudication as a delinquent child by the Warren County Court of Common Pleas, Juvenile Division, for committing the offense of illegal conveyance of a firearm in a school safety zone. We affirm the adjudication.
 {¶ 2} On October 30, 2002, an unidentified female caller reported that she had overheard a group of young males threatening to place a bomb at the Warren County Career Center, a vocational school, on the following day, October 31, 2002. In response to the threat, the Clearcreek Township Police Department positioned several officers in marked police cruisers at the Career Center early on the morning of October 31.
 {¶ 3} Sergeant William Fritz was positioned so that he could observe vehicles coming into the school's parking lot. If he observed anything suspicious, he was to radio Officer Curtis Hensley, who was positioned at the school's exit. Officer Hensley would then stop the vehicle. Officer Hensley was also watching for any vehicles which came onto the school property and immediately attempted to leave without parking, discharging passengers, or otherwise appearing that it did not belong at the school. Officer Hensley was assisted by Officer Raymond Lee who was also positioned at the exit.
 {¶ 4} By 7:00 a.m., Officer Hensley had stopped three or four vehicles. Around this time, appellant drove into the school's student parking lot. He pulled into a parking spot, appeared to notice the various police cruisers, made eye contact with Sergeant Fritz, then immediately backed out of the parking space and drove toward the exit. Sergeant Fritz radioed Officer Hensley, informed him of appellant's suspicious behavior, and directed that he stop appellant.
 {¶ 5} Officer Hensley positioned his police cruiser so that it blocked the driveway, preventing appellant from exiting. He approached appellant, and informed him of the bomb threat and that he was there to search for explosives. He inquired whether appellant had any "guns, knives, weapons, explosives, ammunitions" or the like in his vehicle. Appellant replied that he "didn't think so." When Officer Hensley inquired further as to the meaning of his response, appellant was hesitant and appeared nervous. He eventually told Officer Hensley that there "may be an unloaded .22 caliber gun" in the bed of his pickup truck. By this time Sergeant Fritz arrived to provide backup.
 {¶ 6} Appellant exited the vehicle upon Officer Hensley's request. Officer Hensley removed a pocketknife which was clipped to appellant's pocket. A canine unit also stationed at the school arrived and alerted in the area of the bed of the pickup. Appellant consented to a search of the truck, and a .22 caliber firearm was discovered.
 {¶ 7} Appellant was subsequently alleged to be a delinquent child for violating R.C. 2923.122(A), which prohibits the conveyance of a firearm into a school safety zone. Appellant moved to suppress the evidence gained in the search of his truck, alleging that the search was unconstitutional. The trial court denied the motion and appellant was adjudicated a delinquent child. He appeals, raising a single assignment of error:
 {¶ 8} "The trial court erred as a matter of law and as a matter of fact to the prejudice of the appellant in denying/overruling appellant's motion."
 {¶ 9} When considering a motion to suppress evidence, the trial court serves as the trier of fact and is the primary judge of the weight of the evidence and the credibility of witnesses.State v. Fanning (1982), 1 Ohio St.3d 19, 20. This court, when reviewing a trial court's decision on a motion to suppress, accepts the trial court's findings if they are supported by competent, credible evidence, and relies upon the trial court's ability to assess the credibility of witnesses. State v.McNamara (1997), 124 Ohio App.3d 706, 710. However, an appellate court reviews de novo whether the trial court applied the appropriate legal standard to the facts. Id.
 {¶ 10} In support of his assertion that the trial court erred by denying his motion to suppress, appellant first contends that police did not have reasonable suspicion to stop his vehicle.
 {¶ 11} A police officer may perform an investigatory detention without running afoul of the Fourth Amendment if the officer reasonably suspects that an individual is engaged in criminal activity. State v. Andrews (1991), 57 Ohio St.3d 86,87, citing Terry v. Ohio (1968), 392 U.S. 1, 20, 88 S.Ct. 1868,1879. In order for the stop to be proper, the officer must have had a reasonable suspicion supported by articulable facts, that criminal activity was afoot. The reasonable suspicion required for a valid investigatory stop is a less stringent requirement than that mandated under a probable cause standard. Alabama v.White (1990), 496 U.S. 325, 330, 110 S.Ct. 2412, 2416. Even "wholly lawful conduct might justify the suspicion that criminal activity was afoot." U.S. v. Sokolow (1989), 490 U.S. 1, 9,109 S.Ct. 1581, 1586, citing Reid v. Georgia (1980), 448 U.S. 438,441, 100 S.Ct. 2752.
 {¶ 12} Officer Hensley and Sergeant Fritz were positioned at the school because of the bomb threat reported to police. Sergeant Fritz testified that in response to the threat, police were initiating stops of suspicious vehicles. Officer Hensley testified that police were in particular looking for any vehicle which came onto school property, and then attempted to leave without parking or dropping off any passengers. Sergeant Fritz testified that he observed appellant enter the student parking lot, pull into a space, pause for ten seconds during which he made eye contact with police, then back out of the spot and attempt to exit the parking lot. This information was radioed to Officer Hensley who subsequently stopped appellant. While appellant's conduct may have been entirely lawful, it remains that appellant's behavior was suspicious given the bomb threat against the school. We thus conclude that the stop of appellant's vehicle, based on an articulable, reasonable suspicion of criminal activity, did not violate appellant's Fourth Amendment rights.
 {¶ 13} Appellant further alleges that the investigatory stop should have terminated as soon as he denied any knowledge of the bomb threat. Appellant alleges that his further detention constituted an arrest, not supported by probable cause. We disagree.
 {¶ 14} Because an officer is allowed a reasonable period of time to investigate, the reasonableness of the duration of a stop is determined on a case-by-case basis. A stop is not unreasonable where police diligently pursue a means of investigation that is likely to confirm or dispel their suspicion quickly. U.S. v.Sharpe (1985), 470 U.S. 675, 686, 105 S.Ct. 1568, 1575. As long as an officer continues to have reasonable suspicion of criminal activity, he may extend the length of the stop in order to investigate. State v. Myers (1990), 63 Ohio App.3d 765, 771.
 {¶ 15} In the present case, we have already determined that Officer Hensley had reasonable suspicion to stop appellant. We further find that appellant's detention was supported by articulable facts which support the reasonable suspicion of criminal activity. In particular, when asked whether he had any weapons in his truck, appellant hesitated, then answered evasively, stating, "I don't think so," and "there shouldn't be." Officer Hensley noticed that appellant was visibly nervous. Upon further questioning appellant stated that "there might be a gun, a .22 caliber in the back of the truck." Appellant's evasive answers and visible nervousness provided Officer Hensley with reasonable suspicion to continue the stop in order to investigate.
 {¶ 16} Lastly, appellant argues that although he consented to the search of his truck, the consent was involuntary considering the totality of the circumstances. Appellant thus concludes that the search of his vehicle was unconstitutional.
 {¶ 17} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution secure the right to be free from unreasonable searches and seizures and require warrants to be particular and supported by probable cause. A search conducted without a warrant and without probable cause usually violates the Fourth Amendment, unless consent is given to conduct the search. Schneckloth v. Bustamonte (1973),412 U.S. 218, 219, 93 S.Ct. 2041, 2044. The state bears the burden of proving by clear and convincing evidence that the defendant's consent was "freely and voluntarily given." Floridav. Royer (1983), 460 U.S. 491, 497, 103 S.Ct. 1319, 1324. The state has not met its burden when all it has proven is "mere submission to a claim of lawful authority." Id.
 {¶ 18} "The question of whether a consent to a search was in fact `voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth,412 U.S. at 227, 93 S.Ct. at 2047-48. Since this inquiry requires an assessment of the credibility of the evidence, the trier of fact is in the best position to make this determination, State v.Foster (1993), 87 Ohio App.3d 32, 42, and its decision will not be reversed on appeal unless clearly erroneous. See id.; Statev. Clelland (1992), 83 Ohio App.3d 474, 480-481.
 {¶ 19} In the present case, appellant maintains that, reviewing the totality of the circumstances surrounding the encounter, his consent to the search was involuntary. In support of his argument, he points to the following facts: he is a juvenile; there were several police officers present; there was a police canine present; and, he was not permitted to speak with his parents or an attorney.
 {¶ 20} As noted above, the officers' stop and detention of appellant was lawful. After the police canine alerted, Officer Lee sought appellant's consent to search the vehicle. He informed appellant that he did not have to consent to the search. When appellant orally consented to the search, Officer Lee also asked that he sign a written consent, which appellant did. The consent form signed by appellant also states that he has "the right to refuse this search[.]"
 {¶ 21} The stop was not unusually long, and there is no allegation that appellant was threatened or given an inducement to provide his consent to the search. Rather, the evidence indicates that appellant freely gave his consent to search. Viewing the totality of the circumstances, we find that there is competent, credible evidence in the record to sustain the trial court's conclusion that appellant's consent was voluntarily given.
 {¶ 22} We further note that the search was conducted after a trained, police canine indicated that there was contraband in the bed of the truck. Once a trained police dog alerts to a lawfully detained vehicle, as in the present case, an officer has probable cause to search the vehicle for contraband under the "automobile exception" to the search warrant requirement. State v. French
(1995), Ohio App.3d 740, 749. This exception permits police to search a vehicle without a warrant "[i]f a car is readily mobile and probable cause exists to believe it contains contraband."Maryland v. Dyson (1999), 527 U.S. 465, 467, 119 S.Ct. 2013,2014, citing Pennsylvania v. Labron (1996), 518 U.S. 938,116 S.Ct. 2485.
 {¶ 23} Thus, once the police canine alerted in the area of the bed of appellant's truck, the officers had probable cause to conduct a search of the vehicle. Further, the police requested and received appellant's voluntary consent to search the vehicle. Accordingly, for these reasons, the search was lawfully conducted under the Fourth Amendment. The assignment of error is overruled.
 {¶ 24} Judgment affirmed.
Valen, P.J., and Powell, J., concur.