JOURNAL ENTRY AND OPINION
{¶ 1} Dorez Whittsette appeals following a jury trial that convicted him on charges of felonious assault, having a weapon under disability, and receiving stolen property. He claims the verdict was both insufficient and against the manifest weight of the evidence, that the court erred in denying his motion for acquittal, that he was denied the effective assistance of counsel, and that he was prejudiced by prosecutorial misconduct. He additionally claims error in the imposition of consecutive sentences. We affirm.
 {¶ 2} The record reveals that in late March 2004, Whittsette went to The Mirage nightclub in the flats where he unexpectedly found his fiancee, Sharnice Henderson. Shortly after Whittsette's arrival at the club, Sharnice and her sisters, Shanika and Lagatha, were expelled for fighting. Security escorted the group, including Whittsette, outside and into a fenced-in parking lot where the women waited for the return of items they left in the club.
 {¶ 3} While the group was standing outside, Peter Lee Jr. and two of his friends, James Long and Derrick Collins, were walking out of the club. Lee immediately noticed Shanika and approached her about the fight and attempted to start a conversation. Long and Collins continued walking toward the parking lot across the street to their car, but lingered outside the fenced-in lot while Lee spoke with Shanika.
 {¶ 4} Believing that Lee had grabbed Shanika's arm, Whittsette approached Lee and told him to leave. Lee refused and a fight ensued. After a brief altercation, Whittsette chased Lee across the fenced-in lot, pointing a gun toward Lee. Cleveland Police Officer Kahlil Cladwell, who worked security at the club, noticed the chase about thirty feet in front of him. He saw Whittsette holding a gun in his right hand and pointing it at Lee. The officer then drew his own gun and aimed at Whittsette. Before he could fire, Whittsette and Lee ran behind a shed. When Officer Caldwell arrived, the two men were on the ground wrestling and Whittsette was striking Lee directly on his head with the handgun. Officer Caldwell immediately dove on the men and wrestled Whittsette until the gun fell from his hands.
 {¶ 5} The police arrived and arrested Whittsette. He was later indicted on four counts: count one charged felonious assault against Peter Lee, in violation of R.C. 2903.11, with one- and five-year firearm specifications, in violation of R.C. 2941.141 and R.C. 2941.145; count two also charged felonious assault; count three charged possession of a weapon while under disability, in violation of R.C. 2923.13; and count four charged receiving stolen property, in violation of R.C. 2913.51. Count two was dismissed prior to trial when the alleged victim, Syretta Davis, failed to appear.
 {¶ 6} Following a jury trial in September 2004, Whittsette was found guilty on one count of felonious assault with a three-year firearm specification, one count of having a weapon while under disability, and found not guilty on the remaining charge of receiving stolen property. He was sentenced to seven years on count one, and four years on count three, with the sentence to run consecutive to a three-year sentence on the gun specifications, for a total of ten years. Sentencing in this case was combined with pending charges of failure to comply with an order of a police officer in CR434606. In CR434606, Whittsette was sentenced to four years, with the sentence to run consecutive to the first. The court also imposed post-release control. Whittsette appeals in the assignments of error set forth in the appendix to this opinion.
I. CONSECUTIVE SENTENCES
 {¶ 7} In his first assignment of error, Whittsette claims error in the imposition of consecutive sentences.
Under R.C. 2929.14(E)(4), a trial court may impose consecutive prison terms for convictions of multiple offenses upon making the following findings enumerated in the statute: "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 8} Although the trial court does not have to use the exact language of the statute, it must be clear from the record that the court made the required findings. State v. Veras (July 8, 1999), Cuyahoga App. Nos. 74416, 74466. When imposing consecutive prison terms for convictions of multiple offenses, the court must make those findings enumerated in this statute, and must also state reasons underlying those findings on the record. See R.C. 2929.19(B)(2)(c); See, also, State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165. "Failure to sufficiently state these reasons on the record constitutes reversible error." State v. Johnson,
Cuyahoga App. No. 80436, 2002-Ohio-7057.
 {¶ 9} At the sentencing hearing, the court ordered the gun specifications to run consecutive to the felonious assault charge, and additionally ordered a four-year consecutive sentence for his probation violation in CR434606.
 {¶ 10} Under R.C. 2929.14(E)(3), however, a trial court has no discretion in the decision to impose a consecutive sentence for a violation of R.C. 2921.331(B). The statute states in pertinent part:
(3) If a prison term is imposed for a violation of division (B) of section 2911.01 of the Revised Code, a violation of division (A) of section 2913.02 of the Revised Code in which the stolen property is a firearm or dangerous ordnance, or a felony violation of division (B) of section 2921.331 [2921.33.1] of the Revised Code, the offender shall serve that prison term consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender."
 {¶ 11} Thus, R.C. 2929.14(E)(3) imposes a mandatory consecutive sentence for violations of R.C. 2921.331(B). See State v. Mango,
7th Dist. No. 01 CA 170, 2002-Ohio-6890; State v. Norris (Nov. 14, 2001), Summit App. No. 20515, 2001-Ohio-1769. For these reasons, the court did not error in imposing consecutive sentences as it relates to Whittsette's failure to comply with an order of a police officer.
 {¶ 12} The trial court also ordered Whittsette's one- and three-year firearm specifications to run consecutive to the felonious assault charge. R.C. 2929.14 specifies the mandatory prison terms that a court must impose for the various firearm specifications. R.C. 2929.14(D)(1)(a) requires a trial court to impose one of the following enhancements to an offender's sentence: (1) a three-year mandatory prison term if the offender is convicted of having "a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense" (R.C. 2941.145 specification); (2) a one-year mandatory prison term if the offender is convicted of having "a firearm on or about the offender's person or under the offender's control while committing the offense" (R.C. 2941.141 specification).
 {¶ 13} Further, under R.C. 2929.14(E)(1)(a), an offender must serve a prison term imposed under 2929.14(D)(1)(a)(ii) or (D)(1)(a)(iii) and a prison term imposed under 2929.14(D)(1)(c) consecutively. As stated in R.C. 2929.14(E)(1)(a), "[I]f both types of mandatory prison terms are imposed, the offender shall serve any mandatory prison term imposed under either division consecutively to any other mandatory prison term imposed under either division."
 {¶ 14} For these reasons, the trial court properly ordered that the firearm specification run consecutively to the charge of felonious assault. Whittsette's first assignment of error lacks merit.
II. TRIAL EVIDENCE
 {¶ 15} In his second, third, and fourth assignments of error, Whittsette claims that the evidence was insufficient and against the manifest weight to support his conviction. He claims that due to this lack of evidence, the trial court should have granted his motion for a Crim. R. 29 acquittal. He claims that there was no evidence presented that he physically harmed Lee or that he "knowingly" had a weapon.
 {¶ 16} We review a claim of insufficiency to determine "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Stallings,89 Ohio St.3d 280, 289, 2000-Ohio-164, quoting Jackson v. Virginia
(1979), 443 U.S. 307, 319. Under the manifest weight review, we assess the quality and credibility of the evidence to determine whether the judgment is adequately supported. State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. We will reverse a judgment on manifest weight grounds only if it appears that the decision reflects an unreasonable view of the evidence and the result is unjust. Id.
 {¶ 17} R.C. 2903.11, felonious assault, provides in relevant part:
(A) No person shall knowingly do either of the following: (1) Cause serious physical harm to another or to another's unborn; (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 18} As defined under R.C. 2901.01(A)(5), "Serious physical harm to persons" means any of the following:
"* * *
(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 19} Whitsette admits that the firearm at issue satisfies the definition of a deadly weapon or dangerous ordinance as defined in R.C. 2923.11(B), but claims that the record lacked evidence that he caused Lee's "serious physical harm" and cites to the fact that Lee did not require medical treatment. (Brief at 10). For authority, he cites toState v. Enovitch (Aug. 20, 1998), Cuyahoga App. No. 72827, where this Court found that a victim's 1.5 centimeter cut over his eyebrow, which caused a scar, did not constitute the serious physical harm" necessitated by the statute.
 {¶ 20} This Court, however, has also held other injuries or attempted injuries met the requisite test. In State v. Davis (May 24, 1984), Cuyahoga App. No. 47622, we found that even the loss of a victim's front tooth constituted "serious physical harm" as statutorily defined. We have also found that a 2 centimeter facial cut resulting in a permanent scar met the requirements of "serious physical harm." State v. Edwards
(1992), 83 Ohio App.3d 357, 360. See, also, State v. Norton (Mar. 4, 1993), Cuyahoga App. No. 61902 (victim's testimony that she missed one and a half weeks of work, her face was swollen and a knot in her jaw lasted two months was sufficient to prove serious physical harm); Statev. Lundy (Apr. 19, 1984), Cuyahoga App. No. 47450 ("the blow to [a victim's] face which caused swelling, bleeding, and apparently rendered him unconscious, was at a minimum an `attempt' to inflict serious physical harm on him.") Moreover, the definition of felonious assault is clear on its face when it states "cause or attempt to cause serious physical harm." (Emphasis added.) On direct exam, Lee testified that Whittsette struck him with a gun, causing gashes on his head that bled. (Tr. at 68, 71, 72). He outlined his injuries and admitted that he failed to go to the hospital for treatment due to a lack of medical insurance. (Tr. at 77). He claims that he self-medicated and attempted to heal the wound inflicted by Whittsette. (Tr. at 78). Officer Caldwell's testimony supported Lee's description of the wound itself and Whittsette's infliction of that wound. He testified that he witnessed Whittsette on the ground wrestling with Lee and hitting Lee on the head with a gun. (Tr. at 143). He also testified that once he wrestled the gun away from Whittsette, the fight nonetheless continued and that Lee's blood was everywhere. (Tr. at 146). Officer Caldwell additionally stated that when he witnessed Whittsette chasing Lee with his gun drawn and in the air, he immediately he drew his own gun and pointed it at Whittsette's back. (Tr. at 141-142).
 {¶ 21} For these reasons, the record contained sufficient evidence to support the conviction of felonious assault, and we find that the verdict was not against the manifest weight of the evidence.
 {¶ 22} Whittsette additionally challenges his conviction of having a weapon under disability in violation of R.C. 2923.13. The statute provides:
(A) * * * [N]o person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: (1) The person is a fugitive from justice. (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence. (3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been an offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse. (4) The person is drug dependent, in danger of drug dependence, or a chronic alcoholic. * * *
 {¶ 23} Whittsette takes issue with that portion of the statute that states, "shall knowingly acquire, have, carry or use any firearm or dangerous ordinance." He admits that a weapon was found where he and Lee had been wrestling, but claims that no one he was with saw him with a weapon. Trial testimony from Lee, Collins, and Officer Caldwell, however, supports his possession and use of such a weapon.
 {¶ 24} As previously discussed, Peter Lee testified as to his personal observation of Whittsette's weapon, of observing Whittsette pull the weapon from his waistband, and of being attacked with this gun. (Tr. at 58-74). In addition, Derrick Collins testified that he personally witnessed Lee and Whittsette struggling over the gun. (Tr. at 244). Officer Caldwell supported both men's recollections when he testified that he personally dove on the fighters, wrestled Whittsette in an attempt to stop the altercation, and finally locked Whittsette's arm in such a position as to make him forcefully drop the gun. (Tr. at 145).
 {¶ 25} Based on this collective testimony, we find that there was sufficient evidence to find Whittsette guilty on the charge of possession of a weapon while under disability, and that his conviction was not against the manifest weight of the evidence.
 {¶ 26} Whittsette's second and fourth assignments of error lack merit.
 {¶ 27} In his third assignment of error, Whittsette claims that because the evidence to the charge of felonious assault was insufficient to prove that he acted knowingly, the trial court should have granted his Crim. R. 29 motion for acquittal.
 {¶ 28} Crim. R. 29 provides:
"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 29} Whether the evidence presented is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486. Whether phrased in terms of a Crim. R. 29 motion, or in terms of a sufficiency of the evidence argument, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. See State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52; State v. Jenks (1991), 61 Ohio St.3d 259. A sufficiency challenge does not allow a reviewing court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 30} Having found that the evidence was fully sufficient to support a conviction of felonious assault, we therefore find that the trial court did not err in denying Whittsette's motion for acquittal.
 {¶ 31} Whittsette's third assignment of error lacks merit.
III. EFFECTIVE ASSISTANCE OF COUNSEL
 {¶ 32} In his fifth assignment of error, Whittsette claims that trial counsel was ineffective on multiple fronts. He claims that he was prejudiced by counsel's failure to request discovery until August 31, 2004, when trial was set for September 15, 2004. He claims that this error prevented him from obtaining information and names about the State's witnesses and from reviewing the gun's test fire report. He additionally claims that the court's failure to take judicial notice of witness James Long's prior conviction was because of trial counsel's failure to show Long the journal entry of his conviction during cross-examination.
 {¶ 33} To establish the grounds for an ineffective assistance of counsel claim, Whittsette must show that (1) the lawyer's performance was deficient, and (2) the lawyer's deficient performance resulted in prejudice. Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052. The Ohio Supreme Court adopted a similar standard in Statev. Lytle (1976), 48 Ohio St.2d 391, 396-397, by stating:
"When considering an allegation of ineffective assistance of counsel, atwo-step process is usually employed. First, there must be adetermination as to whether there has been a substantial violation of anyof defense counsel's essential duties to his client. Next, andanalytically separate * * * there must be a determination as to whetherthe defense was prejudiced by counsel's ineffectiveness."
 {¶ 34} The prejudice arms of both Strickland and Lytle is a "but for" standard — i.e., but for the lawyer's deficient performance, the outcome of the trial would have been different. State v. Crickon (1988),43 Ohio App.3d 171, 175. The court must look to the totality of the circumstances, and not isolated instances of an allegedly deficient performance. State v. Malone (December 13, 1989), Montgomery App. No. 10564. "Ineffective assistance does not exist merely because counsel failed `to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it.'" Id., quoting Smith v. Murray
(1986), 477 U.S. 527, 535, 106 S.Ct. 2661. Therefore, under this standard, Whittsette must show that his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from that deficient performance. State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 35} As outlined by the trial court on several occasions, trial counsel's decision not to request discovery under Crim. R. 16 was in part a tactical decision and in part in response to information concerning disclosure of one of the witnesses. (Tr. at 7-10). "[T]he decision whether or not to submit a request for discovery is presumed to be a trial tactic which does not constitute ineffective assistance of counsel." State v. Northern, Cuyahoga App. No. 35849, 2001 Ohio App. LEXIS 6010, citing State v. Clayton (1980), 62 Ohio St.2d 45. Although Whittsette takes issue with the timing of trial counsel's request for discovery, even a failure to file a motion for discovery, because it carries with it the potential for allowing the State to compel discovery, is a matter of trial tactics and strategy. State v. Nobles,
Cuyahoga App. No. 46323, 1983 Ohio App. LEXIS 15441. "`Debatable trial tactics do not constitute a deprivation of the effective assistance of counsel.'" Clayton, supra at 49, quoting People v. Miller (1972),7 Cal.3d 562, 573-574.
 {¶ 36} Whittsette also claims that trial counsel prejudiced his case by making misstatements to the court. He claims that these misstatements prevented the denial of the motion for acquittal on count four, receiving stolen property. Whittsette, however, was found not guilty of this charge and, therefore, no prejudice can be inferred.
 {¶ 37} With regard to the claim that counsel's actions prejudiced the trial because trial counsel was unable to review the test-fire report of the weapon, we find that this contention lacks merit. There was no discussion concerning the firing of any weapon, only that the weapon in Whittsette's hands had been used to physically attack Lee with the body of the gun. As such, no prejudice from a failure to impeach or cross-examine a witness could result.
 {¶ 38} Whittsette has failed to demonstrate how he was prejudiced by this alleged deficiency, or that the outcome of the trial would have been different.
 {¶ 39} For these reasons, Whittsette's fifth assignment of error lacks merit.
IV. PROSECUTORIAL MISCONDUCT
 {¶ 40} In his final assignment of error, Whittsette contends that the prosecution violated the discovery rule by failing to provide discovery prior to trial. He claims that the State had knowledge of James Long's prior conviction and falsely represented to the court that it did not. As a result, Whittsette contends that he was deprived of the right to a fair trial.
 {¶ 41} To prevail on a claim of prosecutorial misconduct, Whittsette must show that the challenged conduct was improper and that the improprieties deprived him of a fair trial. State v. Phillips,74 Ohio St.3d 72, 90, 1995-Ohio-171. The issue of prejudice is determined by reference to the entirety of the closing argument or the questioning. Prejudice is less likely to be found if the misconduct was an "isolated incident." State v. Keenan (1993), 66 Ohio St.3d 402, 410.
 {¶ 42} Despite Whittsette's contention that the State failed to properly produce evidence regarding Long's prior conviction, trial counsel had summaries of each witnesses' statements. Further, trial counsel specifically stated that he was in possession of information concerning Long's criminal history. (Tr. at 405-406.) Although counsel lacked a certified copy of this history, he was nonetheless aware of Long's criminal past, and explicitly questioned Long concerning his past. (Tr. at 202-204). Ultimately, the trial court resolved this issue and specifically found that there was no bad faith on the part of the prosecution and that there was not a willful violation of discovery rules. (Tr. at 233, 410-411).
 {¶ 43} Whittsette's sixth assignment of error lacks merit.
 {¶ 44} The judgment of the trial court is affirmed.
It is ordered that appellee shall recover of appellant costs herein taxed.
The court finds that there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., And Sweeney, J., concur.
 APPENDIX A ASSIGNMENTS OF ERROR
 "I. THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES WAS NOTSUPPORTED BY THE RECORD AND IS CONTRARY TO LAW.
 II. THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUSTAIN A CONVICTION.
 III. THE TRIAL COURT ERRED BY DENYING APPELLANT'S RULE 29 MOTION.
 IV. APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OFTHE EVIDENCE.
 V. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
 VI. THE PROSECUTION COMMITTED MISCONDUCT THEREBY DENYING APPELLANT'SRIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW."